ANDREW MAST (CSBN 284070)
GABRIEL MARTINEZ (CSBN 275142)
MICHAEL RABKIN (ILRN 6293597)
ALBERT B. SAMBAT (CSBN 236472)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
albert.sambat@usdoj.gov
Telephone: (415) 934-5300

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEITH GOODMAN,<br><br>Defendant. | CASE NO. CR 11-00798 CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1** |

The United States respectfully requests that this Court sentence defendant KEITH GOODMAN to (1) serve eight months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $3,000, a $200 special assessment, and $6,416.50 in restitution. This sentencing recommendation is based on the government's motion for a downward departure of 35 percent from the low end of the Guidelines range for substantial assistance and is consistent with the parties' plea agreement.

//

//

# BACKGROUND

Defendant Goodman is charged with participating in a conspiracy to suppress and restrain competition by rigging bids to obtain selected properties offered at public auctions in San Francisco County from May 2010 through January 2011. He is also charged with a conspiracy to commit mail fraud for the same time period. Goodman partnered with another co-conspirator, Craig Lipton, to purchase properties pursuant to bid-rigging agreements in San Francisco County. Presentence Report ("PSR") ¶ 15. He split the payoff money he paid and received with his partner. *Id.* ¶ 16. Goodman often bid on the properties at the auction while his partner would work out the agreements with other bidders. *Id.* ¶ 15. Goodman also agreed to stop bidding at an auction when his partner informed him that they would be paid to stop bidding. *Id.* ¶ 16.

On October 27, 2011, Goodman was charged by information with bid rigging and conspiracy to commit mail fraud in San Francisco County. Dkt. 1. On January 18, 2012, Goodman pleaded guilty to both counts and began cooperating with the government's investigation. Dkt. 12.

Like his co-defendants, Goodman was given the opportunity to enter a new plea agreement to the bid-rigging charges only. However, due to collateral consequences that could affect Goodman's ability to adopt children, which relate, in part, to the date of Goodman's conviction, the parties have yet to reach a resolution similar to those reached with other defendants. The government does not anticipate that Goodman's fraud conviction will remain at the time of sentencing, however, the Guidelines' range does not differ between the two offenses. *See* Dkt. 12.

Goodman's plea agreement reflects his participation in rigging nine properties in San Francisco County, and a volume of commerce of $1,337,800. PSR ¶ 17. The volume of commerce does not reflect the bid-rigging agreements that Goodman participated in for which he received payoff money. Goodman received payoff money for agreeing not to bid on six properties. *Id.*

//

//

# ARGUMENT

**A.     Sentencing Guidelines Calculations**

### 1.     Criminal History

In Paragraph 14 of the plea agreement, the parties agree that Goodman's Criminal History Category is determined by the Court. The PSR calculates defendant's Criminal History Category as I. PSR ¶ 38.

### 2.     Offense Level

The PSR calculates the total offense level as 13, consistent with the plea agreement. PSR ¶ 33. This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, a two-level increase for a volume of commerce exceeding $1 million, and a downward reduction of two levels for acceptance of responsibility. PSR ¶¶ 24-33. U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1), 2R1.1(b)(2)(A), and 3E1.1(a) (U.S. Sentencing Comm'n 2016). The parties do not agree in the plea agreement as to the applicability of U.S.S.G. §3B1.2(b) (Minor Participant), which would afford the defendant an additional two-level decrease in his offense level. *See* Dkt. 12, ¶11. The government does not believe the two-level downward adjustment is appropriate because Goodman is not "substantially less culpable than the average participant in the criminal activity." U.S.S.G. §3B1.2, comment. n. 3(A). Goodman's volume of commerce exceeds $1 million, and he personally profited from the resale of rigged properties and from payoffs, much like many other defendants in the related cases. *See United States v. Rojas-Millan*, 234 F.3d 464, 472-73 (9th Cir. 2000) (holding that the relevant comparison in determining an adjustment under §3B1.2 is between the defendant's conduct and that of the other participants in the same offense).

Under the Sentencing Guidelines, an offense level of 13 and Criminal History Category of I results in a sentence ranging from 12 to 18 months of imprisonment.

### 3.     Fine and Restitution

The plea agreement reflects a Guidelines fine range of $3,000 to $30,000 based on a total offense level of 13. Dkt. 12. In conjunction with its custodial recommendation, the government

//

recommends a $3,000 fine.  The government recommends restitution in the amount of $6,416.50, consistent with the plea agreement.  PSR ¶ 74.

**B.      Basis for Downward Departure for Substantial Assistance**

Pursuant to §5K1.1 of the Guidelines, the government moves for a downward departure for substantial assistance.  The government recommends a 35 percent reduction from the low end of the Guidelines range of 12 months, resulting in a sentence of 8 months.

The timing, significance, nature, and extent of Goodman's cooperation warrant a 35 percent reduction.  Goodman entered his plea agreement pre-indictment on January 18, 2012, and immediately began cooperating in the investigation.  His plea may have influenced the decisions of defendants who pleaded after him to also plead guilty and accept responsibility.

Additionally, Goodman provided two candid interviews with the FBI in which he produced documents such as e-mails and explained their content regarding certain bid-rigging agreements.  Goodman provided corroborating information regarding the operation of the conspiracy, the conduct of his partnership with other conspirators, and various bid-rigging agreements.  Goodman also assisted the FBI in identifying individuals suspected of participating in the conspiracy by reviewing DMV photos and surveillance photographs.  Goodman also made himself readily available to the prosecution team in the event he would be needed for further information or potential testimony.  For these reasons, a 35 percent downward departure for substantial assistance to the investigation and prosecution of these cases is appropriate.

**C.      Sentencing Recommendation**

The government's recommendation of eight months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553.  The Court's sentence must reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and white-collar crime generally.

Given the magnitude of the financial harm caused by Goodman's conduct, the government's recommendation, which includes a custodial term, is appropriate and consistent with the commentary in the applicable Guidelines.  The commentary makes clear that "prison terms for [Antitrust] offenders should be . . . common" and "alternatives such as community

confinement [should] not be used to avoid imprisonment of antitrust offenders." U.S.S.G. §2R1.1, cmt. n. 5 & Background. Given Goodman's substantial assets, a fine alone—in the absence of a custodial term—would not serve as an adequate deterrent. The foreclosure auctions were vulnerable to bid rigging, especially in the aftermath of the foreclosure crisis, when the auctions were flooded with investment opportunities.

The government's recommended sentence also adequately considers the history and characteristics of the defendant, including his early decision to accept responsibility, his willingness to pay restitution and cooperate in the investigation, and his lack of criminal history. The government is especially mindful of certain collateral consequences arising from Goodman's conviction in this case relating to a potential adoption. The government has attempted to make certain accommodations based on this fact, but requests that the sentence imposed by the Court avoid unwarranted disparities among defendants similarly situated to Goodman.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant the government's motion for a downward departure of 35 percent from the low end of the Guidelines range for substantial assistance and sentence defendant Goodman to (1) serve eight months of custody, (2) serve three years of supervised release, and (3) pay a criminal fine of $3,000, a $200 special assessment, and $6,416.50 in restitution.

Dated: April 19, 2018                    Respectfully submitted,

                                         /s/
                                         ALBERT B. SAMBAT
                                         Trial Attorney
                                         United States Department of Justice
                                         Antitrust Division

U.S.' SENT'G MEMO                              5
*United States v. Goodman*, CR 11-00798 CRB